**AMERICAN BROADCASTING COMPANIES, INC. and Capital Cities/ABC, Inc., Plaintiffs–Appellants,**

v.

**The UNITED STATES, Defendant–Appellee,**

**MCA, Inc., Universal City Studios, Inc., TCF Holdings, Inc., Twentieth Century Fox, Turner Entertainment Company, the Coca–Cola Company, Columbia Pictures Ind., Inc., and Gulf & Western Ind. Inc., Third–Party–Defendants–Appellees.**

No. 87–1605.

United States Court of Appeals, Federal Circuit.

May 19, 1988.

As Amended on Grant of Rehearing June 27, 1988.

Martin D. Ginsburg, Fried, Frank, Harris, Shriver and Jacobsen, Washington, D.C., argued for plaintiffs-appellants. With him on the brief were John T. Boese, Alan S. Kaden, Elliot E. Polebaum, John F. Coverdale and Brenda A. Stanulevich.

Bruce Ellisen, Dept. of Justice, Washington, D.C., argued for defendant-appellee U.S. With him on the brief were William S. Rose, Jr., Asst. Atty. Gen., Gary R. Allen and Ann Belanger Durney.

Stuart Robinowitz, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, argued for appellees MCA, Inc., et al. With him on the brief were Cameron Clark, Lewis R. Clayton, Brad S. Karp, Jeffrey J. Wild, Cynthia Pinkos, Eileen S. Silvers and Linda M. Daves, of counsel. Also on the

brief were Boris I. Bittker, of New Haven, Conn., of counsel and William P. McClure, Geoffrey B. Lanning and George L. Squires, McClure & Trotter, Washington, D.C., of counsel.

Before NIES and BISSELL, Circuit Judges, NICHOLS, Senior Circuit Judge.

NICHOLS, Senior Circuit Judge.

We have before us for review a decision of the Claims Court, reported *sub nom. RCA Corporation v. United States,* 12 Cl.Ct. 569 (1987) which, on cross-motions for summary judgment, enters a partial summary judgment dismissing appellant American Broadcasting Company's (ABC) tax refund complaints Nos. 692–86T, 204–85T, 189–82T, and 235–83T. These complaints all pursue investment tax credits (ITC) on motion picture films produced for television, under Internal Revenue Code § 48(k), *as amended* in 1976 by Pub.L. No. 94–455, 90 Stat. 1591. They relate to taxable years when the films were produced, 1962–1979. The judgment is only partial because it does not dismiss claims for such credits as apply to films ABC produced "in-house." The dispute is who gets the ITC which is for purposes of this litigation a fixed sum for each film. The third-party defendants, who filed the summary judgment motions (herein sometimes called "studios") are producers who made the disputed films with ABC's financial support and who were allowed all or most of the ITC. The Internal Revenue Service (IRS) is more or less a stakeholder, but defends its allocation of ITC. We affirm the trial court's dismissal of complaints Nos. 692–86T and 204–85T, and vacate and remand for further proceedings the dismissal of complaint No. 235–83T. We also vacate the dismissal of complaint No. 189–82T insofar as it affects films, if any, in which ABC held a financial interest in syndication.

I

*Background*

A. *Procedure*

Four separate complaints were filed by ABC between 1982 and 1986, contesting

various applications of section 48(k) ITC, to specific years between 1962 and 1979. We find it more convenient to take them up in reverse chronological order, as the more recent ones present fewer difficulties. The trial court dealt with them as one mass. Each complaint was before the trial court and each complaint was stated to be in part dismissed pursuant to RUSCC 54(b). 12 Cl.Ct. at 581. Complaint No. 692–86T, filed October 30, 1986, requested review of ITC granted the studios and denied ABC for tax years 1978 and 1979. Complaint No. 204–85T, filed April 10, 1985, requested review of the IRS decision to deny ABC claimed ITC for years 1975, 1976, and 1977 (plus a carryback for 1972). Complaint No. 189–82T, filed April 14, 1982, requested review of tax years 1973 and 1974 and whether the proper amount of ITC was allowed ABC. Lastly, complaint No. 235–83T, filed April 12, 1983, disputed the ITC disallowed ABC for qualified films deducted in returns for the years 1962 through 1972. The trial court dismissed all four complaints in part, and made appropriate recitals that appellate review of its decision would facilitate review of remaining issues, etc. It is clear the remaining issues as to "in-house" productions do not involve the third-party defendants and as to such defendants, the decision is final. The complaints and the trial court's opinion are thus properly before us in the present appeal.

## B. *Facts*

Familiarity with the facts is presumed, as they are stated in 12 Cl.Ct. 569, and only those facts necessary to this court's opinion will be discussed. Both the Claims Court opinion and the briefs for the studios accept the facts as stated by ABC for the purpose of the motions in question. In order to simplify matters, this court will also rely on the facts as recited by ABC. ABC claims entitlement to ITC for television films financed and broadcast by ABC between 1962 and 1979. The ITC is claimed under the Internal Revenue Code of 1954, § 38, § 48(k) (*as amended* in 1976 by Pub.L. No. 94–455). The IRS allowed the ITC, in whole or in part, to the film producers with whom ABC worked. The IRS disallowed ABC's claim to any ITC when ABC did not own a financial interest in the syndication of the film, as was the case with films produced after 1972. The statute includes provisions allowing the taxpayer to elect to apply it retroactively, §§ 804(c)(2) and (e)(2). ABC has so elected, apparently under one or the other.

The films in question may be divided into two groups: pre–1972 and post–1972. The year 1972 represents a turning point because the Federal Communications Commission (FCC) promulgated rules which precluded television networks (after August 1, 1972, and June 1, 1973, respectively) from acquiring any interest in off-network or syndication rights. Nineteen-seventy two was a split year; that is, up until August 1, 1972, the networks were permitted to own syndication rights in films they produced and/or broadcast. After August 1, 1972, networks were precluded from having an ownership interest reflected as syndication rights in television films. *See* 47 C.F.R. § 73.658(j)(1)(i)–(ii) (1987). The FCC specifically chose not to require networks to divest themselves of rights acquired prior to the effective date of the regulations. *See* Report & Order in Docket No. 12783, adopted May 4, 1970, ¶ 35, 23 F.C.C.2d 382, 399. Consequently, ABC asserts financial interests in syndication acquired under contracts entered into prior to the effective date of the FCC Order in certain films placed in service after that date. Such films are considered pre–1972 films for purposes of this opinion.

The post–1972 films thus were subject to FCC regulation, *id.*, defining the type and amount of ownership networks could exercise regarding such films. The pre–1972 issues involved older films that were made before the regulation was passed. As to the older group, the IRS allowed the ITC to the extent the network acquired a "part" of the films. ABC also challenged the way its part was calculated when it had been allowed a part.

ABC paid deficiencies and sued to recover refunds in the United States Claims Court. ABC questioned the interpretation of section 48(k) and the implementing regu-

lation, 26 C.F.R. § 1.48–8, as applied to its films. The network asserted that the implementing regulations go beyond the face of the statute in that the regulations require more than just a demonstration of risk of loss. It says it would show on trial that it funded the productions in such a manner that it bore most or all of the risk of loss. The Claims Court, however, denied that risk of loss is the sole criterion. The Claims Court, Kozinski, *C.J.*, denied the studios' partial summary judgment motion in May 1985. On July 13, 1987, the court, Margolis, J., entered a partial summary judgment covering complaints Nos. 692–86T, 204–85T, 189–82T, and 235–83T under Claims Court Rule 54(b), dismissing ABC's tax refund claims so far as they relate to studio-produced films.

## II

### Issue

The issue at hand is whether the trial court properly dismissed all four complaints requesting review of IRS decisions denying ABC certain amounts of ITC, except as to the "in house" productions.

## III

### Discussion

■ The trial court separated the years in question only at 1972, when the FCC regulation altered the possible amount of ITC a television network could take as a tax credit. For convenience, however, because the complaints cover certain segregated periods, this opinion will discuss the complaints separately in reverse chronological order, as stated above.

### A. Complaint No. 692–86T

The trial court's opinion clearly and succinctly discusses the 1976 Tax Act, the 1979 regulation promulgated to implement section 48(k) of the 1976 Act, and the application of these laws to tax years post-1976. Complaint No. 692–86T covers tax years 1978 to 1979. The involved regulation by its own terms covers "all years" and is clearly intended to apply retroactively. 44 Fed.Reg. 20,416 (1979) (to be codified at 26

C.F.R. § 1.48–8). The trial court's analysis of the law as it applies to these years is correct and we affirm the court's dismissal of this complaint as proper in light of the legal conclusions the trial judge draws. While we do not adopt its language as ours, we accept its showing that the statutory language ABC relies on in section 48(k)(1)(c) does not so unambiguously state that "risk of loss" is the sole criterion of entitlement to the ITC that recourse to the IRC regulation and the legislative history are unwarranted. Recourse to them shows that one must also have an "ownership interest" which, in turn, requires a "depreciable interest" which, after 1972, ABC did not have. Neither the trial court, nor we, accepts ABC's argument challenging the validity of the regulations, the interpretation of section 48(k), and the denial of ITC to ABC for 1978 and 1979. As such, we affirm the partial dismissal of 692–86T.

### B. Complaint No. 204–85T

This complaint relates to ABC's tax years 1975, 1976, and 1977. As section 48(k) itself embodies an effective date in section 804(e)(2) making the pertinent parts of section 48(k) effective as to years commencing after December 31, 1974, it is clear that whatever the trial court said about complaint No. 692–86T is equally applicable to complaint No. 204–85T, and we affirm on that basis.

### C. Complaint No. 189–82T

This complaint relates to 1973 and 1974. By the terms of Pub.L. No. 94–455, the amended section 48(k) could, by consent, apply to those years so far as ABC elected retroactive application of section 48(k) to those years. It is alleged and not denied that such consents were granted and therefore the trial court had every right to opine as it did, in lump or mass, about this complaint, together with the two discussed above insofar as the complaint refers to films in which ABC had no financial interest in syndication. ABC, however, asserts a financial interest in syndication of a number of films produced under contracts entered into prior to August 1, 1972, but

placed in service in 1973 or 1974. We therefore vacate the judgment in part and remand for further consideration in light of our discussion of complaint No. 235–83T.

### D. *Complaint No. 235–83T*

■ Remaining, therefore, is complaint No. 235–83T, filed April 12, 1983, requesting a review of the ITC granted ABC as to tax years 1962 to 1972. Here is where we run into difficulty. The "pre–1972" films in question are not subject to the same ITC analysis under the 1976 Act because treatment of network ownership in syndication rights altered dramatically in 1972, *i.e.*, such ownership was prohibited. The trial court points out the importance of this watershed but then it dismisses ABC's pre–1972 complaint with no notice of the crucial difference it has itself highlighted, which well might require a different result. In its complaint (235–83T), ABC expressly states that it "seeks the recovery, from the United States of America, * * *, of income taxes paid for the tax years 1962, 1963, * * *, and 1972 together with interest thereon." It lists the "in-house" productions, not here involved, and others prepared by those it calls "packagers," the studios. The Claims Court, however, does nothing more than partially dismiss this complaint like the others, with no further explanation. We hold that such a dismissal was inappropriate absent a clear discussion of relevant pre–1972 law and application of law to fact.

The problems arising under complaint 235–83T are complicated by the occurrence of numerous instances where the IRS allowed some ITC for certain films produced by "packagers," as to which ABC did have syndication rights because the FCC had not yet prohibited networks from owning syndication rights. Such rights allowed networks to share in the profits inuring from exhibition of the films by third parties other than the networks, after the initial broadcasts. In such cases, the IRS apparently accepted that the network was in part an owner. It allocated the total investment between broadcasting and syndication and allowed ABC only a pro rata part of the syndication investment as ITC. ABC says it should receive a larger part computed by reference to its entire investment.

The partial judgment dismisses this class of claim with the others produced by the third-party defendants, and there is not a word to explain why. The legal issues, ABC says, are entirely different from those the trial court expressly deals with, *i.e.*, those involving post–1972 films where ABC was not allowed to have syndication rights and was allowed by the IRS no ITC. The third-party defendants explain this omission as due to what, in effect, was a waiver. ABC failed, they say, to notify the trial court in its cross-motions that it still asserted this class of claim. ABC says it gave ample notice. It is hard to see why ABC would have waived such an important category of claim. ABC filed on August 15, 1986, a "statement of genuine issues," including the following: "ABC contends that, with respect to virtually all films in issue, broadcast between 1962 and 1972, ABC owned an interest in exploitation rights including a profit participation interest in syndication revenues." The complaint stated such a notice, and it is the complaint the trial court dismissed. The inclusion of this class of claim in the judgment of dismissal may be a sheer inadvertence or it may be based on some reason the trial court has not divulged. It may be the reason is waiver, and the trial court may have thought the issue was one it need not pass on. It may be the trial court agrees with the IRS' method of calculation. We cannot perform our function of appellate review until we know. We cannot tell whether the judgment is overinclusive or the opinion underinclusive. The litigants are entitled to clarity and decisions on all issues raised. *McKeague v. United States*, 788 F.2d 755, 758 (Fed.Cir.1986).

The retroactive application of a 1976 tax statute to events as remote as 1962 is startling, but is explained by the unsettled conditions the trial court points out and the statutory consent to retroactive application. ABC invokes the 1976 statute and it must take the bitter with the sweet, the regulatory gloss on the 1976 statute.

## E.

The trial court's "Conclusion" states "[t]he Internal Revenue Service's denial of the plaintiff's tax refund claims is upheld * * *." This sounds as if the IRS had achieved the status of prevailing party in all respects and as the claims against the third-party defendants are then also dismissed, it appears as if plaintiff takes nothing. If this were true, the judgment would not be a partial one as it is repeatedly called, but would have disposed of the case entirely. The statement appears an inadvertence, but we cannot disregard it on our feeling it does not state the court's true meaning. With the concession by ABC that it has no claims involving syndication rights after 1972, and the exclusion of issues respecting "in-house" productions from the summary judgment, we deem ourselves safe in affirming the petitions that involve no films in which ABC had financial interests in syndication, but with respect to 235–83T and certain films in 189–82T, there are so many uncertainties, we see no alternative to vacating the judgment as to them and remanding for further consideration and disposition consistent with this opinion.

## IV

### Conclusion

The trial tribunal succinctly and thoroughly addressed each query presented with the exception of the issues involving films in which ABC had financial interests in syndication discussed in complaints Nos. 235–83T and 189–82T. The trial court's discussion of the facts and the law resulted in a well-reasoned decision fitting the issues before the court. We see no reason to disturb the court's opinion and therefore affirm the trial court's decision as to complaints Nos. 692–86T and 204–85T. We vacate the judgment in complaint No. 235–83T and 189–82T as regards films in which ABC had financial interests in syndication and remand for further proceedings consistent with this opinion.

### Costs

Each party to bear its own costs.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED IN PART.

### ORDER

American Broadcasting Companies, Inc. and Capital Cities/ABC, Inc. (ABC) filed a motion for rehearing without suggestion for *in banc* consideration on May 27, 1988. ABC contends that the court's opinion should be amended to deal with certain films, placed in service in 1973–1974, in which ABC says it possessed syndication rights. Upon review of the materials presented—oral argument, excerpts of proceedings before the Claims Court, trial brief excerpts, and a reference to an excerpt from ABC's appellate reply brief—and to avoid requiring error or injustice under the so-called "mandate rule"—

IT IS ORDERED THAT:

The petition for rehearing is granted solely to the extent of making the following amendments to the opinion issued by this court on May 19, 1988: